O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHANEL T.,                                      )     Case No. 5:21-cv-00751-SP
                                                )
            Plaintiff,                          )
                                                )
      v.                                        )     MEMORANDUM OPINION AND
                                                )     ORDER
KILOLO KIJAKAZI, Acting                         )
Commissioner of Social Security                 )
Administration,                                 )
                                                )
            Defendant.                          )
                                                )
_____ )

**I.**

**INTRODUCTION**

On April 28, 2021, plaintiff Chanel T. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI") and child's insurance benefits based on disability ("CIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision: (1) whether the

1    Administrative Law Judge ("ALJ") properly considered the opinion of Dr.

2    Margaret Donohue; (2) whether the ALJ properly considered the opinion of Dr.

3    Laura Elena Gutierrez; (3) whether the ALJ properly evaluated the limiting effects

4    of obesity in her residual functional capacity ("RFC") determination; and (4)

5    whether the ALJ erred at step five.  Memorandum in Support of Plaintiff's

6    Complaint ("P. Mem.") at 2-18; *see* Memorandum in Support of Defendant's

7    Answer ("D. Mem.") at 4-14.

8         Having carefully studied the parties' memoranda, the Administrative Record

9    ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein,

10   the ALJ properly considered the medical opinions and the effects of obesity in her

11   RFC determination, but the ALJ's step five finding was not supported by

12   substantial evidence.  The court therefore remands this matter to the Commissioner

13   in accordance with the principles and instructions enunciated in this Memorandum

14   Opinion and Order.

15                                          **II.**

16                    **FACTUAL AND PROCEDURAL BACKGROUND**

17        Plaintiff, who alleges she was born with a disability in 1994, is a high school

18   graduate.  AR at 48, 73, 89, 291.  Plaintiff has past relevant work as a fast food

19   worker, security guard, delivery person, and chauffeur.  *Id*. at 65.

20        On September 19, 2018, plaintiff filed an application for SSI due to a

21   learning disability, attention deficit hyperactivity disorder ("ADHD"), mood

22   disorder, obsessive compulsive disorder ("OCD"), and obesity.  *Id*. at 89-90.  On

23   October 17, 2018, plaintiff filed an application for CIB due to the same

24   impairments.[1]  *Id*. at 73-74.  The applications were denied initially and upon

25   _____

26        [1]   Plaintiff reported that she applied for and was granted CIB at the age of nine
     due to a learning disability and "frontal lobe dysfunction," which was subsequently
27   denied two years later.  AR at 888.  The Disability Determination Explanation does
     not reflect plaintiff filed an CIB application in 2003, but shows one in September
28

                                             2

1  reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 143-63,
2  167-69.

3        On May 6, 2020, plaintiff, represented by counsel, appeared and testified at
4  a hearing before the ALJ. *Id*. at 40-72. The ALJ also heard testimony from Sandra
5  Fioretti, a vocational expert ("VE"). *Id*. at 64-70. On June 8, 2020, the ALJ
6  denied plaintiff's claims for benefits. *Id*. at 17-34.

7        In her decision, the ALJ first noted plaintiff had not attained the age 22 as of
8  November 19, 1994, the alleged onset date. *Id*. at 19.

9        Then, applying the well-known five-step sequential evaluation process, the
10 ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity
11 since the alleged onset date. *Id*.

12       At step two, the ALJ found plaintiff suffered from the severe impairments of
13 obesity, ADHD, borderline personality disorder, anxiety disorder, OCD, and major
14 depressive disorder. *Id*. at 20.

15       At step three, the ALJ found plaintiff's impairments, whether individually or
16 in combination, did not meet or medically equal one of the listed impairments set
17 forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

18       The ALJ then assessed plaintiff's RFC,[2] and determined plaintiff had the
19 physical RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b),
20 416.967(b), with the limitations that plaintiff: could lift and carry 20 pounds
21 occasionally and ten pounds frequently; could stand and walk for six hours out of

22       ——————————————

23 2013 with a final determination date in January 2015. *Id*. at 90.

24
25     [2]   Residual functional capacity is what a claimant can do despite existing
   exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26 56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation,
   the ALJ must proceed to an intermediate step in which the ALJ assesses the
27 claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151
28 n.2 (9th Cir. 2007).

1    an eight-hour workday; could sit for six hours out of an eight-hour workday; could
2    do postural activities occasionally; and could never climb ladders, ropes, or
3    scaffolds. *Id.* at 24.  Regarding plaintiff's mental RFC, the ALJ determined
4    plaintiff was limited to simple, repetitive tasks that are not production based, and
5    could have no public contact. *Id*.

6         The ALJ found, at step four, that plaintiff was unable to perform her past
7    relevant work as a fast food worker, security guard, delivery person, and chauffeur.
8    *Id*. at 32.

9         At step five, the ALJ found there were jobs that existed in significant
10   numbers in the national economy that plaintiff could perform, including bench
11   assembler, order caller, and small products assembler. *Id*. at 33.  Consequently, the
12   ALJ concluded plaintiff did not suffer from a disability as defined by the Social
13   Security Act. *Id*. at 33-34.

14        Plaintiff filed a timely request for review of the ALJ's decision, which the
15   Appeals Council denied. *Id.* at 3-5.  The ALJ's decision stands as the final
16   decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

19        This court is empowered to review decisions by the Commissioner to deny
20   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
21   Administration ("SSA") must be upheld if they are free of legal error and
22   supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th
23   Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based
24   on legal error or are not supported by substantial evidence in the record, the court
25   may reject the findings and set aside the decision to deny benefits. *Aukland v.
26   Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
27   1144, 1147 (9th Cir. 2001).

28

1    "Substantial evidence is more than a mere scintilla, but less than a
2    preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such
3    "relevant evidence which a reasonable person might accept as adequate to support
4    a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
5    F.3d at 459.  To determine whether substantial evidence supports the ALJ's
6    finding, the reviewing court must review the administrative record as a whole,
7    "weighing both the evidence that supports and the evidence that detracts from the
8    ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be
9    affirmed simply by isolating a specific quantum of supporting evidence.'"
10   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th
11   Cir. 1998)).  If the evidence can reasonably support either affirming or reversing
12   the ALJ's decision, the reviewing court "'may not substitute its judgment for that
13   of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.
14   1992)).

15                                      **IV.**

16                                **DISCUSSION**

17   **A.    The ALJ Properly Considered the Opinions of the Consulting**
18           **Psychologists**

19           Plaintiff argues the ALJ failed to properly consider the opinions of
20   consulting psychologists Dr. Hannah Donohue and Dr. Laura Elena Gutierrez.  P.
21   Mem. at 2-13.  Specifically, plaintiff contends that despite purporting to accept Dr.
22   Donohue's opinion that plaintiff had moderate limitations in responding to
23   workplace changes, maintaining persistence and pace, and interacting appropriately
24   with supervisors, coworkers, and peers, the ALJ failed to incorporate these
25   limitations into her RFC assessment, and did not provide specific and legitimate
26   reasons for this rejection.  Plaintiff additionally contends the ALJ failed to provide
27   specific and legitimate reasons for discounting Dr. Gutierrez's recommendations.
28

                                          5

1    RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

2    §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ reaches an RFC determination by

3    reviewing and considering all of the relevant evidence, including non-severe

4    impairments.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2); *see* Social

5    Security Ruling ("SSR") 96-8p ("In assessing RFC, the adjudicator must consider

6    limitations and restrictions imposed by all of an individual's impairments, even

7    those that are not 'severe.'").[3]

8         Among the evidence an ALJ relies on in an RFC assessment is medical

9    evidence and opinions.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  For claims

10   filed before March 27, 2017, the opinion of a treating physician was given more

11   weight then an examining physician's opinion, which was given more weight than

12   a reviewing physician's opinion.  *See Holohan*, 246 F.3d at 1202.  Under this

13   previous hierarchy of medical opinions framework, the Ninth Circuit required an

14   ALJ to provide clear and convincing reasons supported by substantial evidence to

15   reject an uncontradicted opinion of a treating or examining physician, or specific

16   and legitimate reasons supported by substantial evidence to reject a contradicted

17   opinion of a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830-

18   31 (9th Cir. 1996) (as amended).

19        Under the revised regulations, for cases filed on or after March 27, 2017

20   such as this one, an ALJ will no longer defer or give specific evidentiary weight to

21   any medical opinions.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

22        For claims subject to the new regulations, the former hierarchy of

23

24        [3]  "The Commissioner issues Social Security Rulings to clarify the Act's
     implementing regulations and the agency's policies.  SSRs are binding on all
25   components of the SSA.  SSRs do not have the force of law.  However, because
     they represent the Commissioner's interpretation of the agency's regulations, we
26   give them some deference.  We will not defer to SSRs if they are inconsistent with
     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th
27   Cir. 2001) (internal citations omitted).
28

1          medical opinions – in which we assign presumptive weight based

2          on the extent of the doctor's relationship with the claimant – no

3          longer applies.  Now, an ALJ's decision, including the decision

4          to discredit any medical opinion, must simply be supported by

5          substantial evidence.

6  *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  As such, the previous

7  requirement that an ALJ provide "specific and legitimate" reasons to reject a

8  treating or examining physician's opinion "is clearly irreconcilable" with the new

9  regulations.  *Id.* at 790.

10        An ALJ will now consider the persuasiveness of the medical opinions and

11  findings based on five factors: (1) supportability; (2) consistency; (3) relationship

12  with the claimant; (4) specialization; and (5) other factors that tend to support or

13  contradict the medical opinion.  20 C.F.R. §§ 404.1520c(b)-(c), 416.920c(b)-(c);

14  *see Sylvester G. v. Saul*, 2021 WL 2435816, at *2 (C.D. Cal. June 15, 2021).  The

15  most important of these factors are supportability and consistency.  20 C.F.R.

16  §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ "must 'articulate . . . how

17  persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other

18  source . . . and 'explain how [he or she] considered the supportability and

19  consistency factors' in reaching these findings."  *Woods*, 32 F.4th at 792 (quoting

20  20 C.F.R. § 404.1520c(b), (b)(2)).  The ALJ may, but is not required to, explain

21  how she or he considered the other three factors.  20 C.F.R. §§ 404.1520c(b)(2),

22  416.920c(b)(2).  But when two or more medical opinions "about the same issue are

23  both equally well-supported . . .  and consistent with the record . . . but are not

24  exactly the same," the ALJ is then required to explain how "the other most

25  persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

26  §§ 404.1520c(b)(3), 416.920c(b)(3).

27        Thus, the questions are whether the ALJ properly evaluated Dr. Donohue's

28

1   and Dr. Gutierrez's opinions under the new regulations, and whether her decision

2   was supported by substantial evidence.

3         **1.**    **Dr. Margaret Donohue**

4         Dr. Margaret Donohue, a psychologist, examined plaintiff on October 11,

5   2014.  AR at 880-84.  Dr. Donohue also reviewed the records supplied by the

6   Commissioner and administered several tests.  *Id*. at 880.  Based on the tests and

7   examination, Dr. Donohue diagnosed plaintiff with a reported history of acquired

8   brain injury at birth, most likely mild hypoxic encephalopathy; signs of attentional

9   difficulties; signs of speech, language, and mathematical reasoning difficulties;

10  borderline personality disorder, dynamics; and mild intellectual deficiency to

11  borderline intellectual ability.  *Id*. at 884.  Dr. Donohue opined plaintiff was unable

12  to manage her finances and had mild limitations in her ability to understand,

13  remember, and carry out short, simplistic instructions; make simplistic

14  work-related instructions without special supervision; and comply with job rules

15  such as safety.  *Id.*  Dr. Donohue further opined plaintiff was moderately limited in

16  her ability to understand, remember, and carry out detailed and complex

17  instructions; respond to change in a normal workplace setting; maintain

18  persistence, concentration, and pace in a normal workplace setting; and interact

19  appropriately with supervisors, coworkers, and peers on a consistent basis.  *Id*.

20        As relevant, the ALJ limited plaintiff to simple, repetitive tasks that are not

21  production based and no public contact.  *Id.* at 24.  In reaching her mental RFC

22  determination, the ALJ found the IQ test score obtained by Dr. Donohue to be

23  unpersuasive given plaintiff's prior IQ testing.  *Id*. at 30.  But the ALJ found Dr.

24  Donohue's opined moderate limitations concerning plaintiff's social functioning

25  and ability to understand, remember, and carry out detailed and complex, as well as

26  the mild limitations, to be persuasive.  *Id*. at 31.  Plaintiff contends that despite

27  finding Dr. Donohue's opinion to be persuasive, well supported, and consistent

28

1   with the record, the ALJ did not incorporate the moderate limitations in the ability

2   to respond to workplace changes, maintain persistence and pace, and interact

3   appropriately with supervisors, coworkers, and peers in her RFC assessment.  P.

4   Mem. at 6.  Contrary to plaintiff's contention, the ALJ did not reject Dr.

5   Donohue's opined moderate limitations.

6        It is an ALJ's responsibility to translate medical opinions into concrete,

7   functional limitations.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Rounds v.*

8   *Comm'r*, 807 F.3d 996 (9th Cir. 2015) ("[T]he ALJ is responsible for translating

9   and incorporating clinical findings into a succinct RFC."); *Stubbs-Danielson v.*

10  *Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ translated claimant's condition

11  into concrete restrictions).  The translation of the limitations must be consistent or

12  supported by the evidence in the record.  *Stubbs-Danielson*, 539 F.3d at 1174

13  ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to

14  concentration, persistence, or pace where the assessment is consistent with

15  restrictions identified in the medical testimony.").  Here, the ALJ's restrictions

16  were consistent with Dr. Donohue's opinion and were supported by the evidence.

17       First, the ALJ did not err when she failed to include a functional limitation

18  concerning plaintiff's ability to respond to changes in the workplace.  In support of

19  her argument, plaintiff relies on an unpublished Ninth Circuit decision, *Bagby v.*

20  *Comm'r*, 606 Fed. Appx. 888 (9th Cir. 2015), in which the Ninth Circuit found the

21  ALJ's limitation of claimant to "simple, repetitive tasks, no contact with the public,

22  and occasional interaction with coworkers" did not reflect claimant's moderate

23  limitations in the ability to respond appropriately to changes in a routine work

24  setting.  *Id.* at 890 (internal quotation marks omitted).  The Ninth Circuit noted that

25  the limited ability to respond to changes is distinct from the claimant's "limited

26  ability to interact with others; to understand, remember, and follow complex

27  instructions; and to make judgments on complex work-related decisions."  *Id*.

28

9

1   (internal quotation marks omitted).  The instant case is distinguishable from *Bagby*.

2   Here, like Dr. Donohue, state agency psychologists Dr. Helen Patterson and Dr.

3   Anna M. Franco, whose opinions the ALJ found persuasive, also opined plaintiff

4   would be moderately limited in her ability to respond appropriately to workplace

5   changes.  AR at 85, 101, 120, 137.  But Dr. Patterson and Dr. Franco explained

6   that despite this moderate limitation, plaintiff retained adequate ability to adapt to

7   normal changes within a work-like environment.  *Id*. at 86, 102, 120, 137.  Thus,

8   the ALJ's decision not to include a separate limitation regarding plaintiff's ability

9   to respond to changes in the workplace was supported by the medical evidence.

10         Second, the ALJ's limitation of plaintiff to simple repetitive work

11   adequately captures Dr. Donohue's opined moderate limitations in maintaining

12   persistence and pace.  The Ninth Circuit and its district courts have consistently

13   held that a reasonable translation of moderate limitation in maintaining

14   concentration, persistence, and pace is a limitation to simple, routine work.  *See*

15   *Stubbs-Danielson*, 539 F.3d at 1173-74 (the limitation to simple, routine, repetitive

16   sedentary work properly incorporated limitations regarding attention, concentration

17   and pace); *see also Shoemaker v. Berryhill*, 710 Fed. Appx. 750, 751 (9th Cir.

18   2018) (ALJ's translation of moderate limitations with concentration, persistence,

19   and pace to simple, routine tasks with the freedom to shift in a chair at will without

20   taking him off task was a rational interpretation of plaintiff's self-reported

21   limitations)*; Turner v. Berryhill*, 705 Fed. Appx. 495, 498 (9th Cir. 2017) ("An

22   RFC determination limiting a claimant to 'simple, repetitive tasks' adequately

23   captures limitations in concentration, persistence, or pace where the determination

24   is consistent with the restrictions identified in the medical evidence."); *Teresa M.*

25   *v. Kijakazi*, 2021 WL 2941978, at *7 (C.D. Cal. Jul. 13, 2017) ("[T]he ALJ

26   adequately accounted for Plaintiff's moderate limitations in concentration and

27   persistence by limiting her to noncomplex, routine tasks."); *Bennett v. Colvin*, 202

28

F. Supp. 3d 1119, 1127 (N.D. Cal. 2016) ("[T]he ALJ did not err in translating his finding of a mild to moderate limitation in concentration, persistence, and pace into a restriction to light work and simple, repetitive tasks.").  Moreover, the ALJ's translation of the moderate persistence and pace limitations was supported by the medical evidence.  The state agency psychologists both explained that despite moderate limitations in her ability to maintain attention and concentration for extended periods, plaintiff retained adequate ability to maintain adequate concentration, persistence, and pace, as needed to sustain a normal workday and workweek.  AR at 84-85, 100-01, 119, 136; *see French v. Saul*, 2020 WL 5249626, at *1-*2 (E.D. Cal. Sept. 3, 2020) (the ALJ's translation of moderate limitations in concentration, persistence, and pace into simple, routine work was supported by substantial evidence as he relied on doctors' opinions to reach that conclusion).

Finally, the ALJ's RFC assessment also adequately captures Dr. Donohue's opinion that plaintiff is moderately limited in her ability to interact appropriately with supervisors, coworkers, and peers.  Here, case law is divided over whether a limitation to simple, repetitive tasks encompasses moderate limitations with social functioning.  Some courts have found that a limitation to simple, routine tasks encompasses moderate limitations with social functioning, including the ability to get along with supervisors and coworkers.  *See, e.g, Garza v. Comm'r*, 2022 WL 2974691, at *9 (E.D. Cal. Jul. 27, 2022) (citing multiple cases supporting the argument that a limitation to simple tasks adequately encompasses moderate limitations with social functioning); *Gann v. Berryhill*, 2018 WL 2441581, at *10 (E.D. Cal. May 31, 2018) ("A limitation to simple tasks performed in unskilled work adequately encompasses moderate limitations with social functioning including getting along with peers and responding appropriately to supervisors.").  But other courts have concluded that when the ALJ opines limitations with social interactions, there is a distinction between the public, co-workers, and supervisors.

1  *See, e.g., Shelley V. v. Saul*, 2020 WL 1131489, at *8 (D. Or. Mar. 9, 2020) (the
2  ALJ's limitations on interactions with co-workers and the public does not address
3  the physician's opined limitations on the supervisory relationship); *Melissa R. v.*
4  *Berryhill*, 2018 WL 6507898, at *4 (C.D. Cal. Dec. 11, 2018) ("[A]n inability to
5  appropriately interact with or respond to criticism from supervisors is distinct from
6  an inability to interact with either coworkers or the public."). This court agrees
7  that there is a distinction between interactions with supervisors, coworkers, and the
8  public. Nevertheless, the ALJ did not err.

9       As with the other moderate limitations at issue here, the state agency
10  psychologists agreed with Dr. Donohue's opinion that plaintiff was moderately
11  limited in her ability to interact appropriately with supervisors and coworkers and
12  opined a more severe limitation – marked – regarding plaintiff's ability to interact
13  with the public. AR at 85, 101, 119, 136. Again, the state agency psychologists
14  translated these limitations to workplace functions and explained that despite these
15  limitations, plaintiff "retains adequate capacity for appropriate work-related social
16  interaction, as required in a normal work environment, to respond appropriately to
17  supervisor feedback and interacting appropriately with co-workers," but may not
18  be able to handle a job requiring frequent or close physical contact with the public.
19  *Id*. The state agency physicians' opinions, therefore, supported the ALJ's
20  assessment that plaintiff did not require a separate functional limitation regarding
21  interactions with supervisors and coworkers.

22       Accordingly, the ALJ did not reject Dr. Donohue's opinion. Instead, the
23  RFC determination adequately encompassed the moderate limitations she opined
24  and was supported by substantial evidence.

25       **2.    Dr. Laura Elena Gutierrez**
26       Dr. Laura Elena Gutierrez, a psychologist, evaluated plaintiff on March 31
27  and April 4, 2017 to assess her current neuropsychological status. *Id*. at 887-96.

28

1  Dr. Gutierrez reviewed the available medical records, interviewed plaintiff, and
2  administered several cognitive tests.  *Id*. at 887, 894-96.  Based on plaintiff's
3  history, prior evaluations, interview, and the tests, Dr. Gutierrez noted plaintiff had
4  significantly reduced intellectual and cognitive abilities, but plaintiff's inconsistent
5  performance precluded the valid interpretation of deficits.  *Id*. at 892.  Indeed, Dr.
6  Gutierrez opined the findings may underestimate her current cognitive abilities and
7  overestimate deficits.  *Id*.  Dr. Gutierrez opined plaintiff had ADHD, a mood
8  disorder, and a learning disability.  *Id.* at 893.  Dr. Gutierrez further opined
9  plaintiff may find that certain recommendations – working at a comfortable pace,
10  focusing on one task at a time, having information repeated as necessary, having
11  information presented through multiple modules, and using beneficial
12  compensatory aids – may be beneficial and would "promote cognitive efficiency."
13  *Id*. at 893-94.

14      A medical opinion is defined as "statement from a medical source about
15  what you can still do despite your impairment(s) and whether you have one or
16  more impairment-related limitations or restrictions in the following abilities: . . .
17  (ii) Your ability to perform mental demands of work activities, such as
18  understanding; remembering; maintaining concentration, persistence, or pace;
19  carrying out instructions; or responding appropriately to supervision, co-workers,
20  or work pressures in a work setting."  20 C.F.R. §§ 404.1513(a)(2)(ii),
21  416.913(a)(2)(ii).  Dr. Gutierrez's recommendations do not constitute a medical
22  opinion because they are equivocal recommendations for improvement and not
23  findings of necessary functional limitations.  *See Rounds*, 807 F.3d at 1006 ("An
24  ALJ may rationally rely on specific imperatives regarding a claimant's limitations,
25  rather than recommendations."); *see, e.g.*, *Alexzander Siddar B. v. Kijakazi*, 2022
26  WL 4079352, at *5, *8 (D. Id. Sept. 6, 2022) (physician's recommendations to
27  help claimant graduate and transition to job opportunities did not constitute a
28

13

1  medical opinion); *Lee v. Comm'r*, 2017 WL 1153037, at *4 (E.D. Cal. Mar. 28,

2  2017) (statement "that plaintiff would 'probably do better' in a non-public setting

3  with 'exposure/contact to others' that is 'not too intense and/or prolonged[]'" did

4  not constitute a medical opinion); *Murray v. Colvin*, 2014 WL 2109944, at *5

5  (E.D. Cal. May 20, 2014) (physician's comment about assistance that might be

6  helpful in improving plaintiff's interpersonal functioning did not constitute an

7  opinion).  As such, the ALJ was not required to consider the persuasiveness of Dr.

8  Gutierrez's recommendations.

9        In any event, the ALJ considered Dr. Gutierrez's recommendations and

10  found the record did not support the need for so much support.  AR at 30.  This

11  finding was supported by the medical opinions, medical record, and plaintiff's

12  activities of daily living.

13        Accordingly, the ALJ properly evaluated the medical opinions.  Substantial

14  evidence supports the ALJ's translation of Dr. Donohue's opined limitations into

15  concrete functional limitations in her RFC determination.  As for Dr. Gutierrez's

16  evaluation, the ALJ was not required to consider the persuasiveness of the

17  recommendations since they did not constitute a medical opinion.

18  **B.    <u>The ALJ Properly Considered Plaintiff's Obesity</u>**

19        Plaintiff contends the ALJ properly found her obesity to be a severe

20  impairment, but failed to evaluate the limiting effects of her obesity on her RFC

21  and the impact on her related conditions.  P. Mem. at 13-14.  Specifically, plaintiff

22  asserts the ALJ failed to consider the impact of her obesity on her sleep apnea and

23  eating disorder, as well as the fact her obesity likely aggravated her anxiety and

24  made it difficult to interact with peers and co-workers.  *Id*. at 14.

25        Although obesity is not a listed impairment, the ALJ must consider the effect

26  of obesity on a claimant's other impairments, ability to work, and general health

27  even when a claimant does not raise the issue.  *See Revised Medical Criteria for*

28

*Determination of a Disability, Endocrine System and Related Criteria,* 64 F.R. 46122 (effective October 25, 1999) (delisting 9.09, "Obesity," from the Listings)*; Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003); *see also* Social Security Ruling 02-1p (requiring an ALJ to consider the effects of obesity at several points in the five-step sequential evaluation).  An ALJ must "evaluate each case based on the information in the case record" since obesity may or may not increase the severity of the impairments.  SSR 19-2p.

The medical records reflect plaintiff was obese, plaintiff's physicians advised her to lose weight, she was in a program for bariatric surgery,[4] and she suffered from various mental health impairments.  *See, e.g., id.* at 928-45, 996, 1033, 1048, 1143.  Plaintiff testified that she suffered from pain in her ankles and legs, had swollen legs, could sit for one hour at a time, could walk or stand for five minutes at a time, needed help with directions when driving, got fired from her jobs because she was unable to understand what her employer wanted, took medications for depression and anxiety, and had problems being around people. *See id*. at 48-59.  In her Function Report, plaintiff also stated she could not understand what people asked of her, suffered from sleep apnea, and could do laundry, cook meals, and clean.  *Id*. at 328-30.

Substantial evidence in the record shows that the ALJ properly considered plaintiff's obesity.  The ALJ examined the record and determined that plaintiff's obesity was severe. AR at 20.  In reaching that determination, the ALJ considered "the effect [of plaintiff's obesity] on exertional functions, nonexertional functions, stress on weight-bearing joints, limitations of range of motion, ability to manipulate objects, ability to tolerate environmental conditions, and physical and mental ability to sustain function over time." *Id*., *see Lewis v. Apfel*, 236 F.3d 503,

---

[4]    Plaintiff's bariatric surgery was put on hold in 2020 due to the COVID pandemic.  *See* AR at 1070, 6342-43.

513 (9th Cir. 2001) (ALJ is not required to discuss the evidence supporting the step three determination in a "Step Three Findings" section itself and, instead, may meet this requirement by discussing the relevant evidence supporting the step three determination anywhere in the decision).  The ALJ recognized plaintiff's sleep apnea and mental health symptoms, but noted plaintiff's somewhat normal level of daily activity, her non-compliance with her Continuous Positive Airway Pressure ("CPAP") treatment, and her primarily normal physical and mental findings at examinations.  *See* AR at 20, 25-27.

With regard to plaintiff's sleep apnea, the ALJ noted plaintiff was prescribed a CPAP and reported that it helped her with her energy during the day.  AR at 26, 1285.  But plaintiff was non-compliant with her CPAP usage from March 2017 through at least May 2019.  *Id*. at 26, 887, 3778.  Thus, to the extent plaintiff's obesity exacerbated her sleep apnea, the record suggests plaintiff's sleep apnea would be controlled if she were compliant with her treatment.  *See Mead v. Astrue*, 330 Fed. Appx. 646, 648 (9th Cir. 2009) (evidence showing a plaintiff's condition improved with treatment may be a clear and convincing reason for an adverse credibility finding); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits.").

Regarding plaintiff's mental health symptoms, the ALJ found plaintiff suffered from ADHD, borderline personality disorder, anxiety disorder, OCD, and major depressive disorder, and the record contained many negative mental status findings. AR at 20, 27.  But the ALJ determined the record reflected plaintiff only received conservative treatment and engaged in a somewhat normal level of daily activity, including the ability to care for her daughter, drive, work full time and part time jobs, do laundry, cook, and shop.  *Id*. at 25-26.  The ALJ also noted that although plaintiff exhibited mental health symptoms, plaintiff also consistently:

16

had a normal mood and affect; was alert, cooperative, and oriented to person, place, and time; had no depression or suicidal ideation; and exhibited judgment within normal limits. *See id.*; *see, e.g., id.* at 926, 1058, 1138, 1397, 1907, 2717-19, 4098-99, 4717-18. Based on the records and medical opinions, the ALJ precluded plaintiff from interacting with the public and limited her to simple, repetitive tasks that are not production based. *Id.* at 24. As such, the ALJ considered the limiting effects of obesity on her mental limitations.

Similarly, to the extent plaintiff argues the ALJ failed to consider the limiting effects of obesity on her physical limitations, the ALJ noted the overall record reflected plaintiff had a somewhat normal level of daily activity and mostly normal physical findings. *See* AR at 25-27. Plaintiff infrequently mentioned complaints and symptoms related to obesity – *e.g.,* left knee pain in February 2016, swelling in her legs in June 2018, and joint pain in July 2018.[5] AR at 972, 994, 1353. To the contrary, as the ALJ noted, plaintiff repeatedly exhibited normal range of motion, no tenderness, normal strength, and normal gait at her examinations. AR at 26, 1125, 2710, 3733, 5533; *see also, e.g., id.* at 926, 973, 1059, 1148, 3402, 6108. Indeed, in June 2019, plaintiff's physician stated plaintiff did not have the following morbidities related to obesity: diabetes; hypertension; dyslipidemia; obesity hypoventilation syndrome; pulmonary hypertension; musculoskeltal back pain; musculoskeletal joint disease; GERD; ventral/umbilical hernia[6]; stress urinary incontinence; lower extremity edema; pseudotumor cerebri; polycystic ovarian symptom. *Id.* at 4052-54. Plaintiff's physician then stated plaintiff could perform activities of daily living, climb a flight of stairs without angina, and walk two blocks without angina. *Id.* at 4054-55. And at different

---

[5]    Many of plaintiff's complaints about pain resulted from pregnancy, falls, or bunions, and were not related to her obesity. *See, e.g.,* AR 943, 1406, 3631-33.

[6]    Plaintiff subsequently had an umbilical hernia in August 2019. AR at 4968.

1    times, plaintiff engaged in regular physical exercise.  *See, e.g., id*. at 1285, 4117.

2           In short, there was little evidence indicating that plaintiff's obesity limited

3    her functioning or exacerbated other impairments beyond the ALJ's findings.  *See*

4    *Hoffman v. Astrue*, 266 Fed. Appx. 623, 625 (9th Cir. 2008) (holding that ALJ's

5    failure to consider the claimant's obesity in relation to the RFC determination was

6    proper because plaintiff failed to show how obesity, in combination with other

7    impairments, limited her functioning).  The ALJ properly considered the effects of

8    plaintiff's obesity and substantial evidence supported the RFC determination.

9    **C.    The ALJ Erred at Step Five**

10          Plaintiff argues the ALJ erred at step five.  P. Mem. at 15-18.  Specifically,

11   plaintiff contends the ALJ posed an improper hypothetical to the vocational expert

12   and there were apparent conflicts between the VE's testimony and the Dictionary

13   of Occupational Titles ("DOT").  *Id*.

14          **1.    The Hypothetical Posed to the VE Was Not Consistent With the**

15          **RFC Determination**

16          In her RFC determination, the ALJ limited plaintiff to simple, repetitive

17   tasks that are "not production based" and with no public contact.  AR at 24.  At the

18   hearing, however, the ALJ posed to the VE a hypothetical person limited to simple

19   tasks, non-public, and "non-production pace."  *Id*. at 66.  In response to the

20   hypothetical, the VE testified that such person could perform the jobs of bench

21   assembler, order caller, and small products assembler I.  *Id*. at 66-67.  The VE

22   further testified that she understood "production pace" to mean either "a machine

23   driven or a teamwork type of situation, where you have to . . . maintain pace along

24   with someone else or a machine."  *Id*. at 69.

25          "'If a vocational expert's hypothetical does not reflect all the claimant's

26   limitations, then the expert's testimony has no evidentiary value to support a

27   finding that the claimant can perform jobs in the national economy.'"  *See Hill v.*

28

1   *Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d

2   678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted)); *Edlund v.*

3   *Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional

4   authority).   Courts have found legal error when an ALJ poses a hypothetical to the

5   vocational expert that is inconsistent with the claimant's RFC.  *See, e.g., Walker v.*

6   *Colvin*, 2014 WL 1883637, at *4-*5 (D. Or. May 9, 2014) ("ALJ erred by

7   providing a hypothetical to the VE that was inconsistent with Plaintiff's RFC.");

8   *Macapagal v. Astrue*, 2008 WL 4449580, at *3-*4 (N.D. Cal. Sept. 29, 2008)

9   (court cannot conclude that a hypothetical contemplating occasional typing with

10  the left hand is consistent with the RFC preclusion from repetitive use of the left

11  hand).

12        Plaintiff contends there is a material discrepancy between jobs that are "not

13  production based" and those that are "non-production pace."  P. Mem. at 15.

14  Specifically, production based is a broader category than production pace.  *Id.*

15  Defendant argues that there is no authority suggesting a meaningful difference

16  between the two terms, and the ALJ accepted the VE's testimony after the VE

17  explained her understanding of "production pace."  D. Mem. at 12-13.

18        Neither "production based" nor "production pace" have been defined by the

19  Social Security regulations or DOT.  ALJs and VEs have applied varying

20  definitions to the term production pace in other cases.  *See, e.g., A.L. v. Kijakazi*,

21  2021 WL 5771143, at *10 (N.D. Cal. Dec. 6, 2021) (VE defined production paced

22  work as having to do more with having strict numbers than completing tasks, while

23  the ALJ explained that production work is work at a set pace, such as an assembly

24  line); *Eyvonne G. W. v. Saul*, 2020 WL 4018589, at *3 (C.D. Cal. Jul. 16, 2020)

25  (ALJ defined production pace as work that just has to be done by the end of the

26  day); *Buyck v. Saul*, 2019 WL 4274089, at *1 (E.D. Cal. Sept. 10, 2019) (ALJ

27  distinguished between production pace that is "sustained fast-paced activity or

28

work with requirements for meeting explicit quotas, deadlines, or schedules" and normal production pace). And production based is not a commonly used term, but it appears at least some court have accepted it as quota based. *See, e.g., Penrose v. Comm'r*, 2020 WL 7640585, at *6 (D.N.J. Dec. 23, 2020) (ALJ limited claimant to no quota or production based work), *Hanft v. Colvin*, 2015 WL 5896058, at *9 (N.D. Oh. Oct. 8, 2015) (ALJ found claimant could perform work that did not have strict production based quotas). At the hearing, the VE testified to her own understanding of "production pace," which deviates from the general range of definitions of "production pace" in other cases. AR at 69. Although the ALJ accepted the VE's testimony, because the ALJ failed to define "production based" in the RFC determination, and the VE's definition of production pace deviates greatly from others' definitions, the court cannot determine whether there is a meaningful difference between the VE's use of "production pace" in the hypothetical and the ALJ's use of "production based" in the RFC. *See Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (the terms "production rate" and "demand pace" are not common enough for the court to discern what they mean without elaboration); *see, e.g., Terry M. v. Kijakazi*, 2021 WL 5882402, at *4 (D. Md. Dec. 13, 2021) (the ALJ's use of an undefined term – production pace – prevents meaningful review).

Accordingly, the ALJ must clarify "production based" on remand so there is no ambiguity.

### 2.    The ALJ Failed to Reconcile an Apparent Conflict

Even if the hypothetical was proper, plaintiff argues the ALJ still erred at step five because there was an apparent inconsistency between the VE's testimony and the DOT. P. Mem. at 16-17. Specifically, the jobs of bench assembler and small products assembler involve production pace, and the jobs of order caller and small products assembler involve a teamwork situation, which falls under the VE's

definition of production pace.  *Id*.

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is a source of reliable job information).  The DOT is the rebuttable presumptive authority on job classifications.  *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p).

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'"  *Id*. at 1153 (quoting *Johnson*, 60 F.3d at 1435).  Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs.  *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT . . . the ALJ is required to reconcile the conflict."); *see, e.g., Hernandez v. Astrue*, 2011 WL 223595, at *2-*5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the apparent conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict [and] the ALJ provided no explanation for the deviation," the ALJ "therefore committed legal

1    error warranting remand.").  For a conflict to be apparent, the VE's testimony must
2    be at odds with the essential, integral, or expected parts of a job.  *Gutierrez v.*
3    *Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).
4           As an initial matter, the ALJ failed to inquire whether the VE's testimony
5    was consistent with the DOT.  *See* AR at 65-67. *Massachi*, 486 F.3d at 1152
6    (failure to inquire whether the VE's testimony is consistent with the DOT is legal
7    error).  Notwithstanding the fact plaintiff failed to raise this omission as an issue,
8    even had the ALJ inquired whether there was a conflict and the VE testified there
9    was not, the ALJ must resolve any apparent conflict.  Here, there is at least one
10   apparent conflict between the VE's testimony and DOT.
11          With regard to the job of small products assembler I, setting aside the fact
12   that the DOT description, on its face, would seemingly fit most commonly held
13   assumptions of production based or production pace work, the DOT description
14   squarely conflicts with the VE's own definition of production pace.  *See* DOT
15   706.684-022; *Randazzo v. Berryhill*, 725 Fed. Appx. 446, 447 (9th Cir. 2017)
16   (when a claimant was precluded from "highly fast-paced work, such as rapid
17   assembly line work," there was an apparent conflict between the VE testimony's
18   that the claimant could perform the job of small parts assembler and the DOT).
19   The VE testified that she defined production pace as a teamwork or machine driven
20   type of situation, where you have to "maintain pace along with someone else or a
21   machine."  AR at 69.  The DOT describes the small products assembler job as
22   requiring a worker to, among other things, position or fasten parts on an assembly
23   line and work as a member of an assembly team who assembles one or two parts
24   and passes the unit to another team member.  DOT 706.684-022.  Even relying on
25   the VE's own definition of production pace, there is plainly an apparent conflict
26   with the DOT.
27          Whether there was an apparent conflict between the VE's testimony
28

1   concerning the bench assembler job and DOT is a closer call.  The DOT classifies
2   the job of bench assembler as light work and describes the job as requiring a
3   worker to assemble parts to form yard and garden care equipment components.
4   DOT 706.684-042.   Plaintiff contends there is an apparent conflict because the
5   DOT categorizes bench assembler as light work due to the fact it involves a
6   production pace.[7]  P. Mem. at 16.  No court in the Ninth Circuit has addressed the
7   reasons for the bench assembler's light work categorization.  Despite the lack of
8   case law regarding whether the bench assembler job is light work due to the fact it
9   requires working at a production pace, the VE here acknowledges assembling jobs
10  have an expectation of quotas.  AR at 69.  Thus, by defining "production based" in
11  the RFC, the court would better be able to determine whether there was an apparent
12  conflict between the VE's testimony and DOT.

13         As for order caller, there was no apparent conflict.  Both the DOT and VE
14  describe the job as simply requiring an order caller to read down a list.  DOT
15  209.667-014; AR at 69.

16         In sum, the court cannot meaningfully determine whether the hypothetical
17  posed to the VE was consistent with the RFC determination due to the ALJ's
18  failure to define "production based."  In addition, the ALJ failed to address an
19  apparent conflict between the VE's testimony and DOT.  The ALJ's step five
20  finding was therefore not supported by substantial evidence.

21

22

_____

23         [7]    While the regulations define light work as lifting and carrying 20 pounds
24  occasionally, and ten pounds frequently, the DOT explains that a job may be
    classified as light work when the weight lift is negligible but the job "(1) []
25  requires walking or standing to a significant degree; or (2) [] requires sitting most
    of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) []
26  requires working at a production rate pace entailing the constant pushing and/or
27  pulling of materials even though the weight of those materials is negligible."  20
    C.F.R. §§ 404.1567(b), 416.967(b); DOT 706.684-042, 1991 WL 679055.
28

23

# V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary remand rule," the reviewing court will remand to the Commissioner for additional investigation or explanation upon finding error by the ALJ. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014).  Nonetheless, it is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required to allow the ALJ to clarify her RFC determination and follow up with the vocational expert.  On remand, the ALJ shall pose a hypothetical to the VE that is consistent with the RFC determination and defines

1  ambiguous terms such as "production pace" or "production based," and inquire

2  about the apparent conflicts between the VE's testimony and the DOT.  The ALJ

3  shall then determine what work, if any, plaintiff is capable of performing.

4  **VI.**

5  **CONCLUSION**

6       IT IS THEREFORE ORDERED that Judgment shall be entered

7  REVERSING the decision of the Commissioner denying benefits, and

8  REMANDING the matter to the Commissioner for further administrative action

9  consistent with this decision.

10

11 DATED: September 30, 2022

12 _____

13 SHERI PYM
   United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28